IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| XTRA Lease LLC, | ) |
|    Plaintiff, | ) ) ) ) Case No. 4:14-cv-01866 |
| v. | ) ) |
| EJ Madison, LLC, | ) ) |
| and | ) ) |
| E.L. Hollingsworth & Co., | ) ) |
|    Defendants. | ) |

**DEFENDANT E.L. HOLLINGSWORTH & CO.'S
REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS FOR IMPROPER
VENUE, OR, IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE**

Pursuant to the Court's May 15, 2015 Order, Defendant E.L. Hollingsworth & Co. files its Reply Brief in Support of Its Motion to Dismiss for Improper Venue, or, in the Alternative, Motion to Transfer Venue to the United State District Court for the Western District of Texas, El Paso Division, pursuant to 28 U.S.C. § 1404.

**ARGUMENT**

I.    THERE IS NOT A VALID FORUM-SELECTION CLAUSE BETWEEN HOLLINGSWORTH AND XTRA, AND, IN ANY EVENT, WHETHER VENUE IS IMPROPER IS UNAFFECTED BY A FORUM-SELECTION CLAUSE.

      **A. There Is No Valid Forum-Selection Clause Between Hollingsworth and XTRA**

XTRA's principal argument throughout its opposition brief is founded upon the misguided assumption that there is a valid forum-selection clause between XTRA and Hollingsworth. As outlined extensively in Hollingsworth's Memorandum in Opposition to Plaintiff's Motion to Remand, *see* Doc. No. 19, pp. 2-9, there is no basis for binding Hollingsworth to a forum-selection

clause to which it was never a party, as the only forum-selection clause potentially relevant to this case would be an agreement between *only* XTRA and Defendant Madison. While Hollingsworth directs the Court to the complete analysis of this issue contained in its opposition brief to XTRA's motion to remand, in short, Hollingsworth is not sufficiently closely related to Defendant Madison as there is no evidence of overlap in corporate ownership or structure or shared counsel, which typically suggests a common interest. Thus, the terms and conditions of XTRA's contract with Defendant Madison cannot bind Hollingsworth to a forum selection clause it never agreed to.

Within the Eighth Circuit, there are general rules courts follow which direct that nonsignatory defendants will be bound to a forum selection clause only when there is significant overlap in corporate ownership or structure. In fact, the analysis of relevant Eighth Circuit case law provided in Hollingsworth's Memorandum in Opposition, *see* Doc. No. 19, p. 7, shows that nonsignatory parties that end up bound by another's forum selection clause "almost exclusively" involve "a corporation and its subsidiary…and closely affiliated companies." *Hernandez v. Texas Capital Bank, N.A.*, 2008 WL 342758, at *3 (W.D. Mo. Feb. 5, 2008); *see also Marano Enterprises of Kansas v. Z-Teca Restaurants, L.P.*, 254 F.3d 753, 757-58 (8th Cir. 2001); *U.S., ex rel. Lighting & Power Servs., Inc. v. Interface Const. Corp.*, No. 4:07 CV 1144 DDN, 2007 WL 2710030, at *6 (E.D. Mo. Sept. 11, 2007).

Therefore, as there is no evidence to suggest that Hollingsworth and Defendant Madison were more than separate entities with no overlap in corporate ownership or structure at the time of the allegations contained in XTRA's petition, Hollingsworth was not closely related enough to this dispute to make it foreseeable that Hollingsworth would be bound by the forum selection clause in the agreement between XTRA and Madison. As a result, XTRA's contention that "both Defendants are bound by a forum selection clause", is contrary to both Eighth Circuit precedent

and the facts of the case, and any asserted forum-selection clause between Hollingsworth and XTRA should be disregarded as irrelevant to the present Motions before the Court.

### B. Whether Venue Is Wrong or Improper Depends Exclusively on Federal Venue Laws and Is Unaffected by a Forum-Selection Clause

Despite XTRA's repeated attempts to suggest that the issues raised in these Motions are conclusively resolved by the forum-selection clause in its agreement with Defendant Madison, the United States Supreme Court has stated in no uncertain terms that, "[w]hether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 577 (2013).

This principle has been subsequently recognized and relied upon by this Court in determining whether venue in this District is proper. *See Sightpath Med. Servs., LLC v. Terry*, No. 414-CV-01488-JCH, 2015 WL 362662, at *2 (E.D. Mo. Jan. 27, 2015) (citing *Atlantic Marine* for the position that "[a] forum selection clause is outside the scope in determining whether venue is proper"). Indeed, in *Sightpath*, the court granted a defendant's motion to dismiss after finding that this District was an improper venue, despite the presence of a forum-selection clause asserting that the parties submitted to the jurisdiction of the court. *Id.* Just like Defendant Madison, which is not a resident of Missouri, the defendant in *Sightpath* was not a resident of Missouri, and also the substantial part of the events or omissions giving rise to the claims occurred outside of Missouri. *Id.* Therefore, the court concluded that it was proper to dismiss the case for improper venue under 28 U.S.C. § 1406(a). *Id.*

Accordingly, any determination as to the propriety of venue in this District must be made without consideration to any forum-selection clause because, under Supreme Court precedent,

3

such determinations are made based upon the federal venue statutes alone, and more importantly, because there is no forum-selection clause affecting Hollingsworth in this case.

## II. ANY PER SE RULE HOLDING THAT VENUE IS PROPER IN WHICHEVER VENUE A CASE IS REMOVED TO IS INCONSISTENT WITH FEDERAL STATUTES GOVERNING VENUE.

Although XTRA contends that it is a matter of common sense that the removing party cannot argue that venue is improper after removing a case to that venue, XTRA's rule of common sense ignores the Supreme Court's clear guidance indicating that federal statutes, and not actions of any party, determine whether venue is proper. *See Atlantic Marine*, 124 S. Ct. at 577-79. Indeed, just like XTRA's contention that the propriety of a particular venue can be dictated by a forum-selection clause, XTRA's position here is similarly a misguided belief that a party's action can determine whether venue is proper. This point is illustrated in XTRA's citation to *Bacik*, in which the court was under the misguided impression that "defendants have sanctioned the propriety of venue in this district…" *Bacik v. Peek*, 888 F. Supp. 1405, 1413 (N.D. Ohio 1993).

If this were true, and a defendant could sanction the propriety of venue, venue would be proper in any district court to which a state-court case was removed, even if that district was improper according to the federal venue statutes. Despite venue being improper, XTRA's argument here would sanction the propriety of venue simply because the case was removed here. Contrary to this understanding, a defendant cannot sanction the propriety of venue; rather, the propriety of venue is solely dictated by federal statute, and in this instance, the federal statute generally governing venue suggests that venue is improper in this district.

## III. VENUE IS IMPROPER AND THE CASE SHOULD BE DISMISSED.

After making clear that a forum-selection clause has no bearing on whether venue in a particular court is proper, the Supreme Court in *Atlantic Marine* stated that "§ 1391 makes clear that venue in "***all civil actions***" must be determined in accordance with the criteria outlined in ***that***

*section*." 134 S. Ct. at 577 (emphasis added). As this case qualifies as a "civil action" to which § 1391 generally applies, the determination of the propriety of venue should be determined according to the criteria outlined in that section.

Contrary to XTRA's suggestions otherwise, the proper venue analysis under § 1391(b) in this case depends upon whether a substantial part of the events or omissions giving rise to the claim occurred in this District. This is because all of the defendants in this case are *not* residents of the same state. *See* 28 U.S.C. § 1391(b)(2) (2012). Even if Hollingsworth resided in Missouri, there is nothing to suggest that Defendant Madison also resides in Missouri. XTRA's only argument to the contrary is that Defendant Madison contractually consented to personal jurisdiction in St. Louis County by virtue of the forum-selection clause; however, XTRA prefaced this entire portion of its argument with an understanding that its argument was being made "(absent the forum selection clause)", *i.e.*, as if the forum-selection clause did not exist. *See* Doc. No. 33, p. 6.

XTRA cannot have it both ways by arguing that venue is proper in this Court if the forum-selection clause did not exist only because that very same "absent" forum-selection clause gives the Court personal jurisdiction over Defendant Madison that the Court otherwise would not possess. Such circular logic should certainly be rejected, and as a result, the Court must consider whether a substantial part of the events or omissions giving rise to the claim occurred in this District, as all defendants are not residents of Missouri. *See* 28 U.S.C. § 1391(b)(2).

As outlined in Hollingsworth's initial Memorandum of Law, even if Hollingsworth and Madison's alleged actions may have affected XTRA in Missouri, venue is improper in this District because there is insufficient allegedly wrongful activity occurring in this District that is attributable to either Madison or Hollingsworth to constitute a "substantial part of the events or omissions giving rise to the claim", *see* Doc. 13, pp. 4-6, which was not disputed in XTRA's opposition brief.

5

Accordingly, pursuant to 28 U.S.C. § 1406(a), this Court should dismiss this case or transfer it to a District in which it could have been brought—*i.e.*, the Western District of Texas, El Paso Division.

### IV. EVEN IF VENUE IS PROPER IN THIS DISTRICT, THE COURT SHOULD NEVERTHELESS TRANSFER THE CASE TO THE WESTERN DISTRICT OF TEXAS AS IT IS THE MOST CONVENIENT FORUM.

If this Court determines venue is proper in this District, the Court should nevertheless transfer the case to the Western District of Texas as the only arguments presented in the briefing on this issue suggest that it is the most convenient forum for the case to be litigated. It is beyond reasonable dispute that this lawsuit is not, in any meaningful way, connected to this venue. Every meaningful action that XTRA now claims constitutes a breach of contract, conversion, *et cetera*, occurred in or around Defendant Madison's facility in El Paso, Texas. This is where the alleged breaches of contract occurred, as well as the alleged conversion and unlawful possession of XTRA's trailers. As the Eighth Circuit has explained, the decision to transfer venue is not a rigid one; instead, "district courts should weigh any 'case-specific factors' relevant to convenience and fairness to determine whether transfer is warranted", which necessarily means that a district court possesses broad discretion in deciding whether to transfer venue based on the totality of the case. *See In re Apple, Inc.*, 602 F.3d 909, 912 (8th Cir. 2010). As such, and because both the private and public-interest factors support transfer of this case to the Western District of Texas, this case should be transferred.

Despite XTRA's contentions (and as previously explained) there is no forum-selection clause affecting Hollingsworth, and therefore, this is the "typical case" recently identified by the Supreme Court, whereby district courts "must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 581 (2013). Moreover, XTRA's reliance on *Atlantic Marine* for the

6

proposition that a forum-selection clause "should be given controlling weight in all but the most exceptional cases", *see* Doc. No. 33, p. 8, is a misreading of that case. The Supreme Court's instruction that a forum-selection clause should be given controlling weight was, as the Court itself stated, "for enforcement of forum-selection clauses that point to a particular *federal* district", *id.* at 579 (emphasis added), but the forum-selection clause in the agreement between XTRA and Defendant Madison points to a particular *state* court. Regardless, because there is no forum-selection clause applicable to Hollingsworth, the Court should "weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Id.* (quoting 28 U.S.C. § 1404(a)).

Moreover, XTRA's position that Hollingsworth has a burden of putting forth "clear and convincing evidence" supporting transfer based on a single citation to *Dedic v. Price* is without merit. *Dedic v. Price*, No. 4:11-CV-0430-NKL, 2011 WL 5289770, at *1 (W.D. Mo. Nov. 2, 2011) (citing *New York Marine and General Ins. Co. v. Lafarge North America, Inc.,* 599 F.3d 102 (2nd Cir. 2010)). The citation itself makes clear that the court was not describing controlling Eighth Circuit precedent; instead, the court merely pointed to a decision from the Second Circuit, which does not announce the law of this circuit. *See United States v. Peach*, 327 F. Supp. 2d 1081, 1085 (D.N.D. 2004) (recognizing that, as a district court within the Eighth Circuit, it "is not bound by the pronouncements of the Tenth Circuit"). As the Eighth Circuit has not adopted a clear and convincing standard, neither should this Court.

As such, the Court should follow the guidance from the Eighth Circuit in *Apple* and consider the support put forward by *both* parties to determine whether transfer is warranted in the interest of convenience and fairness. *See, e.g.*, *In re Apple, Inc.*, 602 F.3d 909, 913-14 (comparing the convenience assertion made by both the moving and non-moving party to determine whether

7

transfer was warranted). XTRA, however, has not put forward any assertions as to the convenience or inconvenience of litigating this case in the Western District of Texas, and as a result, the only assertions as to the convenience and the fairness of the parties and witnesses indicate the case should be transferred.

### A.  The Private-Interest Considerations Support a Venue Transfer

The convenience factors as part of the private-interest analysis point to the Western District of Texas as the most convenient forum for litigating this case. Many of Defendant Madison's representatives and employees that will be witnesses in this action, for example, will be residents of Texas or nearby southwestern states, as Defendant Madison's principal place of business is in El Paso, Texas. The inconvenience to those witnesses and the Defendants on the whole should the case remain in Missouri is clear.

As the Eighth Circuit recognized in a similar instance regarding employees of Apple, "[i]f Apple's California witnesses were required to travel to Arkansas, Apple would likely incur expenses for airfare, meals and lodging, and losses in productivity from time spent away from work." *In re Apple, Inc.*, 602 F.3d 909, 913-14 (8th Cir. 2010). Moreover, the employees and representatives themselves who were not residents of Missouri, "will suffer the personal costs associated with being away from work, family, and community", which, according to the court, "would be significantly minimized or avoided by transfer" to their home state. *Id.* Like Apple, not only will Defendants incur significant expenses if witnesses and representatives in Texas were required to travel nearly 1,200 miles and roughly 18 hours to a trial in Missouri, but also the witnesses themselves would undoubtedly suffer the personal costs as recognized by the Eighth Circuit.

For example, when Hollingsworth voluntarily coordinated with Defendant Madison and XTRA to return the trailers at issue, Hollingsworth's efforts were directed to Alejandro Grijalva,

who was a warehouse supervisor in El Paso, Texas, which counsel for XTRA was well aware of. *See* Declaration of Jeff Berlin, attached hereto as Exhibit A, ¶ 6. Undoubtedly, Mr. Grijalva will be a key witness in the case who can offer testimony as to the status and possession of the trailers at issue, which according to the rental agreements between Defendant Madison and XTRA were garaged/stored at Defendant Madison's facility in El Paso, Texas. *See* Doc. 6-4; Doc. 6-5. Likewise, Hollingsworth's employee, Frankie Contreras who is involved with truckload sales, not only assisted in Hollingsworth's voluntary efforts to obtain possession of the trailers but also works in El Paso, Texas. *See* Ex. A, ¶ 6. Both Mr. Grijalva and Mr. Contreras can offer testimony regarding ConAgra's possession of the trailers in El Paso, Texas, as well as the voluntary efforts undertaken by Hollingsworth to obtain possession of those trailers following XTRA's demand.

Also, numerous representatives of Defendant Madison, such as Troy Brown, John Warren, Lori Warren, and Shiloah Warren are all residents of Anthony, Texas and qualify as witnesses with personal knowledge of the possession status of the trailers at issue and could testify regarding the same. *See* Ex. A, ¶ 10. These representatives would be key witnesses offering testimony not only as to the claims against Defendant Madison but also as to the allegations made against Hollingsworth regarding the possession of the trailers, as Defendant Madison's initial rental agreements and the actions taken after the signing of those agreements constitute the crux of XTRA's claims in this case. On the other hand, XTRA has not identified a single witness in Eastern Missouri, or a single "generic statement" as to the inconvenience it would suffer if the case were transferred to the Western District of Texas. As a result, the only suggestions of inconvenience before the Court support transferring the case.

Additionally, the only assertions related to the accessibility to records and documents indicate that the case should be transferred to the Western District of Texas. This is because

9

XTRA's claims largely relate to how Defendant Madison handled the trailers leased from XTRA after XTRA relinquished possession over those trailers. As a result, nearly all of the relevant documents and records were maintained by Defendant Madison in El Paso, Texas—the location of their principal place of business. There is no indication from XTRA that any, let alone a majority, of the most relevant documents and records are located in Missouri.

Finally, when considering the location where the conduct complained of occurred, *see Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 696 (8th Cir. 1997), it is clear that this action belongs in the Western District of Texas. This case involves issues concerning the use and possession of trailers that were stored at Defendant Madison's facility in El Paso, Texas, in addition to breach of contract claims concerning Madison's performance of its lease agreement with XTRA. As has been previously addressed, barring XTRA's principal place of business being located in St. Louis, Missouri, every important event underlying XTRA's claims occurred in or around Madison's Texas facility. In fact, XTRA's own Regional Credit Manager stated in an Affidavit that "XTRA Lease believes that some or all of the Equipment is located in El Paso, Texas." *See* Doc. 6-1 (Affidavit of Raul Gonzalez of XTRA Lease LLC), p. 4. XTRA confirmed the same by recognizing that the case "involves actions taken in Texas and Michigan", *see* Doc. No. 33, p. 9, and has made no allegations that the alleged misconduct occurred in Eastern Missouri. Likewise, Hollingsworth did not take any action in St. Louis, Missouri with respect to any of the ten trailers at issue in this case. *See* Ex. A, ¶¶ 7-8. In very similar circumstances the Eighth Circuit found that such facts warranted a transfer. *See In re Apple, Inc.*, 602 F.3d 909, 914 (8th Cir. 2010) (recognizing that transfer was appropriate because the "alleged wrongs occurred in Northern California, while none of the alleged misconduct occurred in Western Arkansas").

Thus, while Missouri's only connection to the case is that it is the site of XTRA's principal place of business, numerous potential witnesses, including many key witnesses, reside in Texas, much of the relevant documentation is located in Texas, and Texas was the site of the alleged misconduct. Accordingly, the private-interest factors weigh strongly in favor of transfer as the inconvenience to the defendants would be significantly minimized if this case were litigated in the Western District of Texas, and XTRA has not provided any assertions evidencing any material inconvenience it would suffer by litigating in the Western District of Texas rather than the Eastern District of Missouri.

### B.  The Public-Interest Factors Support a Venue Transfer

In addition to the private-interest considerations that support transferring this case to the Western District of Texas, the public-interest factors also suggest that it is in the interest of justice to transfer this case.

First, while docket congestion and administrative difficulties are a "permissible factor" in considering a motion to transfer, the Eighth Circuit has instructed that "it is not by itself, a dispositive factor." *In re Apple, Inc.*, 602 F.3d 909, 915 (8th Cir. 2010). Indeed, contrary to XTRA's contention based upon a distinguishable case, it is the rule of this circuit that "relative docket congestion cannot override the several factors of convenience and justice that favor transfer." *Id.* XTRA's reliance on *Union Electric* does nothing to change this rule, as the *Union Electric* case was premised upon the court's finding of a valid forum-selection clause between the parties, which—as previously discussed—is not the present scenario before the court as no such clause exists between XTRA and Hollingsworth. As a result, any consideration of docket congestion cannot overcome the private-interest factors that, as outlined above, establish that transfer is favored in the interest of convenience and justice.

11

In any event, these administrative considerations, including relative docket congestion and the speed of the case from filing to disposition or trial, actually would direct transfer of the case to the Western District of Texas. According to the most recent Federal Court Management Statistics published in December 2014, there are more pending cases per Judgeship in the Eastern District of Missouri (546) than the Western District of Texas (497). *See U.S. District Courts—Federal Court Management Statistics–Profiles—During the 12-Month Periods Ending September 30, 2010 and December 31, 2010 Through 2014*, UNITED STATES COURTS, http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2014/12/31-2, pp. 37, 59. Further, the median time in months from filing to case disposition is longer in the Eastern District of Missouri (8.6) than the Western District of Texas (6.7). *Id.* If the case were to go to trial, the gap between the median time from filing to trial is even greater between the Eastern District of Missouri (25.8) and the Western District of Texas (19.6). *Id.* Therefore, judicial economy would favor the Court transferring this case to the Western District of Texas because the case itself would proceed faster to disposition or trial due to its less crowded docket, as evidenced by the average pending actions per Judgeship.

Additionally, even if Missouri law did apply to the claims against Hollingsworth, the case is unlikely to present any complex or unsettled issues of state law, and therefore, any interest in having a forum that is familiar with Missouri law is given very little weight. *See* 15 Wright, Miller & Cooper, Fed. Prac. & Proc. Juris. § 3854 (4th ed.) (noting that when a case involves basic or well-established issues of state law or issues where the law of the different states is not substantially different, this factor is given significantly less weight, and citing cases). Accordingly, and as more fully detailed in Hollingsworth's initial Memorandum of Law, the public-interest factors also support transferring this case to the Western District of Texas.

## CONCLUSION

For all of the foregoing reasons, Defendant Hollingsworth respectfully requests that the Court either dismiss this case pursuant to 28 U.S.C. § 1406(a) or transfer it to the United States District Court for the Western District of Texas pursuant to 28 U.S.C. § 1404(a) as it is the most convenient forum and the interests of justice would be served by such a transfer, in addition to any such further relief as may be just and proper under the circumstances.

Respectfully Submitted,

HEPLERBROOM LLC

By: /s/ Michael Reda
MICHAEL REDA                    #33591
MREDA@heplerbroom.com
211 North Broadway, Suite 2700
St. Louis, MO  63102
314/241-6160
314/241-6116 – Facsimile
*Attorney for Defendant E.L. Hollingsworth & Co.*

## PROOF OF SERVICE

I hereby certify that I electronically filed on this 5th day of June 2015, the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Christopher Lawhorn
Christopher Kellett
Lauren Wacker
Laura Bailey Brown
Carmody MacDonald PC
120 S. Central Avenue, Suite 1800
St. Louis, MO 63105
T:	314 854 8600
F:	314 854 8660
cjl@carmodymacdonald.com; cpk@carmodymacdonald.com; lnw@carmodymacdonald.com;
lbb@carmodymacdonald.com
*Attorneys for Plaintiff*

/s/Michael Reda